UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**RECEIVED**
Clerk's Office
USDC, Mass.
Date 2/9/05
By M.P.
Deputy Clerk

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | CRIMINAL NO: 04-10219-JLT |
| v.                              ) | |
| ) | |
| **EMMANUEL LEE**                ) | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS

Defendant Emmanual Lee has filed a motion to suppress more than 800 grams of cocaine that he attempted to smuggle into the United States from Jamaica in a suitcase. Despite undisputed evidence showing that Customs Inspectors located the cocaine though their utilization of a physical inspection, an x-ray, and other routine investigative techniques and that they reasonably suspected that Lee's suitcase contained contraband before they dismantled its false bottom (where the cocaine was in fact found), Lee claims that the search violated his Fourth Amendment rights. Because that claim is belied by the undisputed facts in this case, the motion to suppress should be summarily denied.

### BACKGROUND

On June 27, 2004, at approximately 8:15 p.m., defendant, a United States citizen who lives in Philadelphia, arrived at Logan International Airport on USAIR Flight 222. This flight originated from Montego Bay, Jamaica. Jamaica is of course an established source country for drugs being smuggled into the United States. See Affidavit of Inspector James Bailey ("Bailey

Aff.") at ¶4.

After Lee's arrival at Logan, he was selected for a routine secondary inspection by Inspector James Bailey and others. During that inspection, the inspectors both questioned Lee about his travel plans and physically examined a black roller bag type suitcase that Lee acknowledged to be his. Id. at ¶¶5-6.

During the secondary examination, Lee made a number of statements that were inconsistent with the information contained in his travel documents or were otherwise suspicious. For example, Lee claimed that he was traveling alone even though airline records established that he was traveling with Lorenzo Banks on the same reservation. Lee also claimed that he had gone to Jamaica three days earlier with a blue duffle bag but that, while in Jamaica, he had purchased the black roller suitcase for $15 because the blue duffle bag was "too heavy" to carry. Id. at ¶¶6-7.

The inspector's concerns were further exacerbated when they examined Lee's suitcase. Once the contents of the suitcase had been removed, the inspectors noticed an unusual thickness on the bottom of the bag. As a result, they placed the bag on an x-ray machine which confirmed that there were objects within the bag even though it had been emptied. Id. at ¶8; see also x-rays attached to Bailey affidavit as Exhibit 1. Having discovered those abnormalities, the inspectors then brought in Canine

Enforcement Carol Officer Szczawinski and her certified drug dog Roxy who alerted on Lee's suitcase for the presence of drugs. Affidavit of Carol Szczawinski, ¶¶2-4. Then, (and only then), the inspectors dismantled the suitcase and discovered that it had a false bottom that contained approximately 800 grams of cocaine. Bailey Aff. ¶10.

Lee has now moved to suppress the cocaine seized from his suitcase. In what can only be described as a half-hearted effort plainly designed to secure discovery to which he is not entitled,[1] Lee argues that the seizure was the result of "non-routine" investigative methods and that the inspectors lacked any reasonable suspicion to believe that Lee's luggage might contain contraband. Because both arguments fail as a matter of law, and because Lee's perfunctory affidavit is insufficient to justify an evidentiary hearing, the motion to suppress should be summarily denied.[2]

---

[1] The motion to suppress is three pages long and is accompanied by a two-paragraph affidavit that does nothing more than establish that the bag was Lee's and that he did not consent to the search. The Court is provided with no information regarding the length or supposedly intrusive nature of the underlying interrogation and inspection.

[2] Any request for an evidentiary hearing in this matter must be denied because of Lee's failure to establish any legitimate factual dispute as to a material matter. E.g., United States v. Staula, 80 F.3d 596, 603 (1st Cir.1996) ("A hearing is required only if a defendant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record."); United States v. Lilly, 983 F.2d 300, 310-11 (1st Cir. 1992) (the burden is on

3

**ARGUMENT**

I. **NONE OF THE EVIDENCE IN THIS CASE WAS OBTAINED IN VIOLATION OF DEFENDANT'S FOURTH AMENDMENT RIGHTS.**

Neither the brief detention of the defendant nor the routine examination of his luggage violated Lee's Fourth Amendment rights. Both the detention and search were routine and therefore fall squarely within the border crossing exception to the Fourth Amendment. Even assuming that the search was not routine, it was still justified by reasonable suspicion that the defendant was engaged in criminal activity and that his bag contained contraband.

A. <u>The border search exception to the Fourth Amendment's warrant requirement permitted the customs inspectors to stop and search defendant without probable cause or reasonable suspicion</u>

Routine border searches, conducted for the purposes of collecting duties and intercepting contraband destined for the interior of the United States, do not require reasonable suspicion, probable cause, or a warrant. As the First Circuit explained in <u>United States</u> v. <u>Beras</u>, 183 F.3d 22 (1st Cir. 1999), "[u]nder the border search exception, 'routine searches of the persons and effects of entrants are not subject to any

---

the defendant to allege facts sufficiently definite, specific, detailed, and nonconjectural to enable court to conclude that a substantial claim is presented); <u>United States v. Sophie</u>, 900 F.2d 1064, 1071 (7th Cir. 1990) (requiring an evidentiary hearing "only if the party requesting the hearing raises a significant, disputed factual issue").

4

requirement of reasonable suspicion, probable cause, or warrant'" because "[i]t is well established that 'the Fourth Amendment's balance of reasonableness is qualitatively different at the international border than in the interior.'" Id. at 25-26 (quoting United States v. Montoya de Hernandez, 473 U.S. 531, 538 (1985)); accord United States v. Braks, 842 F.2d 509, 514 (1st Cir. 1988) ("The First Circuit standard for routine border searches is the 'no suspicion' standard."). International airports, such as Logan, have specifically been found to be the functional equivalent of a border and, thus, places where the border search exception to the Fourth Amendment applies. See Almeida-Sanchez v. United States, 413 U.S. 266, 272-73 (1973); United States v. Uricoechea-Casallas, 946 F.2d 162, 164 (1st Cir. 1991) (search of passenger's bags on flight arriving from Colombia at airport in Puerto Rico was routine border search).

Although there is no formulaic test for distinguishing routine from non-routine border searches, see Braks, 842 F.2d at 512, the First Circuit has observed that "the only types of border search of an individual's person that have been consistently held to be non-routine are strip-searches and body-cavity searches." Id. at 512-13. In Braks, the First Circuit characterized as routine a search far more intrusive that the straightforward examination performed here. The defendant in Braks, a woman wearing a dress, was escorted to a secondary

5

search room by a female Customs inspector and asked whether she was carrying anything under her clothing. <u>Id.</u> at 510-11. The defendant lifted her skirt and revealed "an abnormal bulge in [her] girdle." <u>Id.</u> at 511. She then admitted that she was carrying contraband and removed two packages of heroin from her girdle. <u>Id.</u> The First Circuit concluded that this search was sufficiently non-intrusive to be characterized as "routine" and therefore required no showing of reasonable suspicion (or of any level of suspicion at all). <u>Id.</u> at 513-15.

The search in this case was similarly not intrusive and can likewise only be characterized as routine. After the inspectors had selected Lee for a secondary examination, they asked him basic questions about his travel plans and inspected his suitcase by opening it and removing its contents. <u>See</u> <u>United States v. Okafor</u>, 285 F.3d 842, 845 (9th Cir. 2003)("the emptying of Okafor's bag and its visual inspection was clearly routine"). Once that inspection the inspection disclosed an unusual bulge in the bottom of the bag, the inspectors placed it on an x-ray machine, which confirmed a significant abnormality in its contents. <u>E.g.</u>, <u>United States v. Johnson</u>, 991 F.2d 1287, 1293 (7th Cir.1993)(x-ray examination of luggage, bags, and other containers at a border is routine and requires neither warrant nor individualized suspicion); <u>United States v. Udofot</u>, 711 F.2d 831, 840 (8th Cir. 1983) (same). <u>See also</u> x-rays attached to

Bailey Affidavit. Having identified this anomaly, the agents brought in a certified drug dog who alerted to the bag, thereby providing further evidence, obtained in the most unobtrusive way, that it contained contraband. See United States v. Perez, 37 F.3d 510, 516 (9th Cir. 1994) (recognizing that the use of a narcotics dog "is perhaps the least intrusive means of searching because it involves no unnecessary opening or forcing of closed containers or sealed areas of the car unless the dog alerts."); United States v. Kelly, 302 F.3d 291 (5th Cir. 2003) (use of canine to sniff pedestrian entering the United States was a "routine border search"); United States v. Cisneros-Corona, 1993 WL 318788 (10th Cir. 1993) (use of drug dog did not exceed permissible scope of routine border search). See also Illinois v. Caballes, __ U.S. __, No. 03-923 (S. Ct. Jan. 24, 2005) (Fourth Amendment does not require reasonable, articulable suspicion of wrongdoing to justify using a drug-detection dog to sniff a vehicle during a legitimate traffic stop). Then (and only then) did the inspectors begin to dismantle the bottom of the bag to determine exactly what it contained. Although the dismantling of the false compartment was impeded by the insert that had been used to hide the false bottom and its contents, the inspection of the bag did not damage anything other than the hidden compartment and did not preclude the suitcase from being used in the manner for which it was originally intended. See United States v. Braks, 842 F.2d

509, 512-13 (1st Cir. 1988) (only strip searches and body cavity searches have consistently been considered sufficiently intrusive to be non-routine); United States v. Smith, 273 F.3d 629 (5th Cir. 2001)("extremely intrusive border searches are not 'routine' and must be predicated upon reasonable suspicion of criminal activity"). Compare United States v. Robles, 45 F.3d 1, 5 (1st Cir. 1995) ("We have little difficulty concluding that drilling a hole into the cylinder was not a routine search"). See also Okafor, 285 F.3d at 846 (although record was insufficient to permit court to determine whether inspection of suitcase was "non-routine," court noted that "If the bag was not permanently and significantly affected, that would tend to make the search routine"); United States v. Flores-Montano, 541 U.S. 149 (2002)(disassembly of gas tank constituted routine border inspection).

    B.   **Assuming that the inspection of the bag was "non-routine," it was based on reasonable suspicion of criminal activity**

Even assuming that the dismantling of the defendant's suitcase was so intrusive that it was the equivalent of a strip-search or body-cavity search, it still did not violate his Fourth Amendment rights because it was justified by reasonable suspicion of criminal activity. In Montoya de Hernandez, supra, the Supreme Court held that "detention of a traveler at the border beyond the scope of a routine customs search and inspection, is justified at

8

its inception if customs agents considering all the facts surrounding the traveler and her trip, *reasonably suspect* that the traveler is smuggling contraband." 473 U.S. at 540-51 (emphasis added). See also United States v. Uricoechea-Casallas, 946 F.2d 162, 166 (1st Cir.1991) ("To satisfy the reasonable suspicion standard, agents must "demonstrate some objective, articulable facts that justify the intrusion as to the particular person and place searched"); Braks, 842 F.2d at 514 (reasonable suspicion, rather than probable cause, is required for non-routine border searches).

The circumstances of this case gave the customs inspectors ample basis to suspect that defendant was smuggling contraband and thereby justify a "non-routine" inspection of his luggage. The defendant was traveling from Jamaica, a known source country and provided the inspectors with information regarding his travel that was inconsistent with the underlying documents. E.g., United States v. Robles, 45 F.3d 1 (1st Cir. 1995)(finding of reasonable suspicion based in part on the fact that the defendant was traveling from Columbia "a known source country for narcotics"); United States v. Lamela, 942 F.2d 100, 102 (1st Cir. 1991) (upholding non routine inspection after defendant "gave inconsistent responses to routine questions relating to the purpose of his travel"); United States v. Smith, 273 F.3d 629 (5th Cir. 2001) (reasonable suspicion determination based in part on

the fact that defendant was traveling from Jamaica). The inspection of Lee's luggage disclosed a physical anomaly in the bottom of his suitcase which was then confirmed by x-rays that disclosed the presence of objects inside a false compartment. United States v. Forde, 1994 WL 390143 (1st Cir. 1994) (held, thick soles, the traces of glue, and the nails in the inside of shoes justified probing and field test); United States v. Johnson, 991 F.2d at 1293 (x-ray indicating presence of object within suitcase justified removal of lining). Although these facts by themselves justified a further search of the suitcase,[3] even then the inspectors did not begin to dismantle the suitcase until a trained and certified drug dog had alerted to the suitcase, thereby independently justifying a search. See United States v. de los Santos Ferrer, 999 F.2d 7, 10 (1st Cir. 1993)(dog alert provided sufficient probable cause for detention of person whose name appeared on luggage tags where dog is "a certified, narcotics-detecting dog" who alerted in a way that dog's handler testified was "expected response when narcotics were present"); United States v. Reyes, 349 F.3d 219 (5th Cir. 2003) (reasonable suspicion based on activities of drug dog during border inspection). Because of all of these factors

---

[3] E.g., United States v. Ruimwijk, 148 F.Supp. 2d 947 (N.D. Ill. 2001)(once customs agents detected presence of foreign objects in defendant's clothes, they had ample justification for a further search to determine what the objects were).

surely justified the dismantling of the suitcase which in turn led to the discovery of the cocaine, the motion to suppress must be denied on this basis as well.

### CONCLUSION

The only issue in this case is whether to deny the motion to suppress because the inspection of the defendant's suitcase was routine or because, if it could be considered non-routine, it was justified by reasonable suspicion. The inspection of the defendant's luggage was carefully done in complete accordance with the defendant's constitutional rights. Because the motion to suppress is therefore frivolous, it must be summarily denied.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: _____  2.9.05
GLEN MACKINLAY
JOHN A. WORTMANN, JR.
Assistant U.S. Attorneys
617-748-3207

### CERTIFICATE OF SERVICE

This is to certify that I have this 9th day of February, 2005 served a copy of this motion on defense counsel for Lee by mail.

JOHN A. WORTMANN, JR.