UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA      )
                              )
                              )
          v.                  )      Cr. No. 04-10219-JLT
                              )
EMMANUEL LEE                  )
                              )


**GOVERNMENT'S SENTENCING MEMORANDUM**

On July 7, 2005, Emmanuel Lee pled guilty to the sole charge against him in this matter.  Lee admitted that on or about June 27, 2004 he unlawfully imported cocaine, a Schedule II controlled substance, into the United States from Jamaica.  <u>See</u> Presentence Report ("PSR") at ¶4.

There is no plea agreement between Lee and the government. Lee reserved the right at the Rule 11 hearing to seek departures including mitigating role for his alleged minor participation in the offense and to dispute the drug weight calculation of the government.

The PSR in this case was issued on October 21, 2005.  In it, the United States Probation Office concluded that Lee has no prior criminal history.  PSR ¶39.  The PSR also determined that Lee was responsible only for the cocaine that he carried at the time that he was arrested at Logan International Airport.  PSR ¶28.  The PSR concluded that the total offense level was 21 with a guideline imprisonment range of 37 to 46 months.  PSR ¶¶35,

74.[1]

Lee's Sentencing Memorandum seeks departures under U.S.S.G. § 3B1.2(b) on the grounds that he played a minimal role in the offense. The U.S. Probation Office did not award a departure for minimal role or even for minor role. PSR ¶30. Lee also disputes the drug weight determination by the government, relying instead upon a weighing of the substance that took place more than one year after the commission of the crime. Lastly, Lee contends that he is entitled to a further departure under the sentencing factors delineated in 18 U.S.C. § 3553. The government contends that the guideline imprisonment range should be 37-46 months. The government therefore addresses the availability of departures under U.S.S.G. § 3B1.2(b), the drug weight determination and the defendant's contention a further departure is warranted based upon the sentencing factors.

### FACTUAL BACKGROUND[2]

Lee arrived at Boston's Logan Airport on a US Air flight from Montego Bay, Jamaica on a lay-over while en-route to his

---

[1]    The PSR notes that the total offense level would be 19 if the court determined that weight of cocaine that Lee possessed when arrested was under 500 grams, PSR ¶36, with an applicable guideline sentence range of 30-47 months. PSR ¶93.

[2]    The facts are derived from the reports of Customs officials and agents from the Bureau of Immigration and Customs and Enforcement ("ICE").

final destination, Philadelphia, PA.  He was processed at the
Customs area and then directed to proceed to the Customs
secondary inspection area for an additional search.

A Customs official noticed a second individual behind Lee in
line, Lorenzo Banks and sent him to the secondary inspection area
as well.  Lee carried with him a black roller luggage bag, tag
number US 489770 that he admitted to owning.  The bag was
examined visually by Customs officials who noted an unusual
thickness in the bottom area.  The bag was then examined by means
of an X-ray which revealed abnormalities inside of the bag.

Lee was then escorted to the Customs search room for
additional inspections.  A specially trained and experienced
canine handler, Agent Szczawinski and her dog, Rox checked Lee's
bag.  Rox alerted on the bag, indicating the presence of
narcotics within the bag.  The bag was further searched and nine
packages of a white powdery substance were seized from the lining
between the rails at the bottom of the bag.  The substances were
field tested and the results were positive for cocaine with an
approximate gross weight of 800 grams.[3]

There were also personal effects of both Lee and Banks in
Lee's black roller bag and also in Bank's travel bag.  Lee was

---

[3]     The nine packages actually contained 502.6 grams of
cocaine when analyzed and weighed on August 4, 2004, according to
the Drug Enforcement Administration ("DEA") form 7, Exhibit 1.

placed under arrest and advised of his Miranda rights.  Banks was also detained for questioning.

Lee waived his rights and agreed to speak with law enforcement agents including members of ICE and the Massachusetts State Police.  He was interviewed separately from Banks.  Lee provided an implausible story that was also inconsistent with Bank's statement.  Lee indicated that he traveled to Jamaica alone for pleasure with a blue duffel bag.  This bag, he claimed, caused his back to ache.  As such, he left it in Jamaica and purchased the bag where the nine packages of narcotics were later found from an unknown man for the sum of $15.  Lee said that he met the man the previous day when the man approached him and told him that he could get Lee "whatever he wanted".  Lee provided few details of his travels while in Jamaica.

ICE agents researched a computer database during Lee's interview and determined that his airline ticket was purchased online through the Travelocity website on June 23, 2004.  The ticket was purchased at the same time that Bank's ticket was purchased.  The flight was scheduled to depart from Philadelphia on June 24, 2004.  The return flight from Jamaica was scheduled for three days later, on June 27, 2004.  One hotel room was also reserved and paid for at that time.

Lee changed his story when he was confronted with this ticketing information.  He admitted that he was friends with

4

Banks and that they traveled together. Lee indicated that the tickets and hotel room were purchased by his mother. He explained that he put some of his personal items into Bank's bag because he lacked room in the newly purchased black roller bag.

Lee could not explain why he permitted Banks to put some of his items into Lee's already full bag. However, Lee maintained that Banks would support his claim of the blue duffle bag because Banks saw it at the hotel in Jamaica where they stayed in nearby rooms.

Banks was also provided Miranda rights, waived his rights and agreed to speak with law enforcement agents. He indicated that he was friends with Lee and they traveled together on the vacation. Banks gave a vague account of his travels while in Jamaica which served to contradict Lee's account. He stated that the tickets were purchased by his cousin. Banks claimed that he gave his cousin $1,000 to pay for his share of the trip and that his cousin agreed to pay any additional cost. Banks denied seeing Lee with a blue duffel bag. He explained that the only bag that he saw in Lee's possession was the black roller bag that Lee had with him at the airport at the time of the search. Banks explained that his personal items were inside of the black roller bag because he lacked the space in his bag to accommodate his belongings. He failed to explain how he managed to get the same items into the same bag for the flight to Jamaica. Banks was

released following the questioning.

Banks testified before the Grand Jury on July 22, 2004.  He testified differently from the statement that he gave to the agents at the time of the incident.  For example, Banks testified that he gave cash to Lee so that Lee could purchase the airline tickets.  Banks further testified that it was Lee's cousin that actually booked the flight and purchased the tickets, and that the total cost of the trip for both of them was $1,000.  Banks also testified inconsistently concerning the payment of his travel while he was in Jamaica.  He admitted to speaking to Lee just prior to testifying before the Grand Jury.

On July 7, 2005 Lee, accompanied by his attorney, met with the government for the purpose of conducting a proffer.  No proffer letter was provided to the defendant.  Lee admitted that he was to be paid $2,500 by a man known to him as "Will" LNU to smuggle the suitcase with drugs into this country from Jamaica.  Lee claimed that he did not know the type or amount of drugs that he carried.  Lee denied any knowledge of Bank's involvement in the smuggling.  Lee also stated that Will LNU bought the airline ticket and had the tickets waiting at the airport.  Lee explained that Will LNU drove him to the airport. Lee stated that several unknown Jamaican men delivered the suitcase to him prior to his departure from Jamaica.

On August 4, 2004, the DEA completed testing the substance

6

that Lee was carrying and determined it to be cocaine
hydrochloride with a net weight of 502.6 grams.  Exhibit 1.  On
August 31, 2005, the defendant employed Harvey Cohen to re-weigh
the narcotics in the presence of ICE agent, Eric LaForte.
Exhibit 2.  LaForte observed the drug weight tests performed by
Cohen to render in a total weight of the cocaine to be 500.0
grams.  Id.

I.   **LEE'S REQUEST FOR A MITIGATING ROLE DEPARTURE UNDER
     § 3B1.2(b) SHOULD BE DENIED**

     Lee claims that he is entitled to a four point decrease due
to his role in the offense.  The PSR awarded no such departure.
PSR ¶30.  Under the Sentencing Guidelines, a decrease of two
points in the defendant's offense level is authorized if he was a
minor participant in criminal activity, and four points if he was
a minimal participant in the crime.  The defendant bears the
burden of proving that he is entitled to a downward adjustment
based upon his role in the offense.  United States v.
Gonzalez-Soberal, 109 F.3d 64, 73 (1st Cir. 1997); United States
v. Ortiz, 966 F.2d 707, 717 (1st Cir. 1992).  The mere fact that
Lee was a drug courier does not automatically entitle him to a
two or four level  mitigating role adjustment.  United States v.
Paz Uribe, 891 F.2d 396, 399 (1st Cir. 1989)("even if the court
found that Paz was only a courier, he would not automatically be
entitled to a reduction").  See also  United States v. Lopez-Gil,

7

965 F.2d 1124, 1131 (1st Cir. 1992)(same); United States v.
Gonsalez-Soberal, 109 F.3d 64, 73 (1st Cir. 1997)(drug courier
seeking role adjustment bears the burden of proof).  Role
requests by couriers require examination of factors such as "the
nature of the defendant's relationship to other participants, the
importance of the defendant's actions to the success of the
venture, and the defendant's awareness of the nature and scope of
the criminal enterprise." Id.; see also  U.S.S.G. § 3B1.2,
comment (background)(role adjustment determinations are "heavily
dependent on" the particular facts).

     The relevant First Circuit decisions reflect these general
principles.  For example, the court has repeatedly affirmed
sentences where district courts refused to give any mitigating
role adjustment to a courier involved in a single drug
transaction.  See United States v. Cepeda, 907 F.2d 11, 12 (1st
Cir. 1990) (affirming district court's refusal to give any
mitigating role adjustment where defendant served as courier for
one 15 gram heroin deal by delivering heroin and collecting
payment); United States v. Torres, 960 F.2d 226, 229 (1st Cir.
1992)(affirming district court's refusal to give any mitigating
role adjustment to defendant who collected money for drug
transaction, received bag from drug courier, and handed bag
containing drugs to undercover agent).  Similarly, the court has
found two-level adjustments to be appropriate for defendants who

8

played a supportive role in a single drug transaction.  See
United States v. DiMarzo, 80 F.3d 656, 661-662 (1st Cir.)
(rejecting claim that defendant who drove to scene of single drug
transaction to act as a lookout was entitled to three or
four-level adjustment under U.S.S.G. § 3B1.2); United States v.
De La Cruz, 996 F.2d 1307, 1314-1315 (1st Cir.) (rejecting claim
that defendant who drove a van in a caravan seeking to carry 240
kilograms of cocaine was entitled to more than a two-level
decrease under U.S.S.G. § 3B1.2); United States v. Rodriquez
Cortes, 949 F.2d 532, 546-547 (1st Cir. 1991)(rejecting claim
that defendant who attempted to collect installment payment on 26
kilograms of cocaine was entitled to more than a two-level
decrease under U.S.S.G. § 3B1.2).

     Couriers play important roles in importation cases involving
large amounts of cocaine, such as the amount in this case, 502.6
grams.  E.g., United States v. Garcia, 920 F.2d 153, 155 (2nd
Cir. 1990)("Couriers are indispensable to the smuggling and
delivery of drugs and their proceeds").  Large scale importation
matters are particularly inappropriate cases to consider minor
role adjustments, much less minimal role adjustments.  The job of
the courier in such transactions is more important than in
virtually any other type of case.  It is the courier who may
perform the most important function and without whom the crime
simply would not occur.  It is the courier who has possession of

9

the drugs for substantial periods of time without supervision or control of any kind.  Unlike other trafficking cases, international couriers put more effort into their crimes simply by the degree of planning required and are therefore far more culpable.  The amount of drugs involved here weighs against departure. E.g., United States v. Lui, 941 F.2d 844, 849 (9th Cir.1991)("[W]e have recognized that possession of a substantial amount of narcotics is grounds for refusing to grant a sentence reduction"); United States v. Mena-Robles, 4 F.3d 1026, 1038 (1st Cir. 1993)(affirming refusal to give minimal role adjustment where defendant guarded money and "amount of drugs involved was quite large").

Application of these principles compels the conclusion that no departure under section 3B1.2(b) is available to Lee.  Lee argues that this is an unusual case because he is less culpable than anyone else involved in the crime of importing cocaine.  The defendant fails to take into account the numerous other likely participants that performed supportive tasks like arranging for transportation, acting as lookout and collecting payment.

The facts here are insufficient to justify a departure.  Lee carried a substantial amount of cocaine into this country, later admitting that he was due to receive $2,500 for his efforts. This conduct does not merit a departure for minor role in the offense, and certainly does not merit consideration for a

departure for minimal role in the offense.

## II.  THE DRUG WEIGHT IS ESTABLISHED BY THE AMOUNT OF THE COCAINE THAT Lee CARRIED AT THE TIME THAT HE WAS ARRESTED

The defendant claims that the proper drug weight should be set by the drug weight determined by his expert witness on August 31, 2005 -- 499.94 grams.  This cocaine total is marginally below the 500 grams threshold, resulting, Lee surmises in two points lower on the base offense level determination.

In determining the amount of cocaine attributable to the defendant, this Court's role is to "approximate the quantity of the controlled substance."  U.S.S.G. §2D1.1, comment n.12.  The First Circuit has consistently upheld drug-quantity findings based on an the weight of drugs seized as well as approximations of historical evidence "as long as it represents a reasoned estimate of quantity."  United States v. Huddleston, 194 F.3d 214, 224 (1st Cir. 1999)(quoting United States v. Webster, 54 F.3d 1, 5 (1st Cir. 1995)); United States v. Rodriquez, 162 F.3d 135, 149 (1st Cir. 1998); United States v. Morillo, 8 F.3d 864, 871 (1st Cir. 1993)("When it is impossible or impractical to obtain an exact drug quantity for sentencing purposes, a reasoned estimate will suffice").  The "reasoned estimate" must be supported by a preponderance of the evidence and is governed by the familiar principle that "when choosing between a number of plausible

11

estimates of drug quantity, none of which is more likely than not the correct quantity, a court must err on the side of caution." United States v. Sepulveda, 102 F.3d 1313, 1318 (1st Cir. 1996).

In making these determinations, this Court has wide discretion to consider "relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."  U.S.S.G. §6A1.3(a); Rodriguez, 162 F.3d at 150 (district court properly considered reliable hearsay evidence and grand jury testimony); United States v. Valencia-Lucena, 988 F.2d 228, 232 (1st Cir. 1993)("Under this generous formulation, the sentencing court has broad discretion to determine what data is, or is not, sufficiently dependable to be used in imposing sentence").

Lee committed the offense on June 27, 2004, more than one year before Lee's expert witness weighed the drugs.  Importantly, Lee's weighing was performed before the DEA chemist used some perceptible amount of the substance to test for the presence of cocaine hydrochloride and to assess the purity of the substance. See Exhibit 1.  At that time, the DEA laboratory concluded that the net weight of the cocaine was 502.6 grams.  Id.  While admittedly this amount is close to the 500 gram threshold, it is still above the statutorily established limit.

The defendant's explanation of how the cocaine weight

dropped below the 500 gram level is contorted.  The most reliable
drug weight determination is the one conducted as close as
possible to the time that the defendant is alleged to have
committed the crime, and before any testing consumed some amount
of cocaine.  Accordingly, in the absence of any faulty procedures
employed by the DEA in conducting its drug weight test, the DEA's
weight determination should be accepted.  The defendant should be
held accountable for 502.6 grams of cocaine, and assessed the
corresponding base offense level of 26.

## III. LEE IS NOT ENTITLED TO A SENTENCE REDUCTION BASED UPON THE SENTENCING FACTORS IN §3553

Lee raises a variety of claims that he contends are
considerations justifying a reduced sentence under the sentencing
factors delineated in 18 U.S.C. § 3553.  His claims center upon
three additional points.  First, Lee claims that he had financial
concerns that forced him to commit the crime.  Second, specific
deterrence of any future criminal conduct by him has been met and
therefore extended incarceration is unnecessary.  Third, general
deterrence is met because Lee has was sought out by others to
participate in the crime.  These claims lack merit.

The PSR did not conclude that any downward departures were
warranted.  PSR ¶¶111-112, and Probation Officer's Response to
Objection #5, page 22.  It indicates that Lee is a unemployed and
has been since January, 2005 as a result of his unreliability as

13

a worker.  PSR ¶62.  The PSR also indicates that Lee was driven to the desire to make a large amount of money, $2,500 by his financial need.  PSR ¶19.   There is no evidence that Lee will not again return to risking apprehension in order to meet family needs, instead of seeking and obtaining legitimate employment to permit him to be a law abiding member of society.  A more lengthy term of imprisonment will serve to raise the risk to Lee and deter his criminal conduct. See 18 U.S.C. §§ 3553(a)(2)(A), and (B).

Likewise, general deterrence of similarly situated persons is not satisfied by only a brief period of imprisonment for Lee. General deterrence is an important consideration in assessing an appropriate sentence. See 18 U.S.C. § 3553(a)(2)(B).  The most effective method of protecting this country from other financially motivated persons from risking apprehension and importing large quantities of drugs is to punish those that are caught severely.  The message of general deterrence will resonate with couriers and other supportive members the organization if the price of apprehension is high.  Here, simply stated a minimal period of incarceration for being arrested with 502.6 grams of cocaine is not sufficient to prevent future criminal conduct.

**III.  CONCLUSION**

Lee is not entitled to the departures that he seeks.  The government has properly established the drug weight at 502.6 grams of cocaine.  Lee's requests should be denied and he should be sentenced within the applicable guideline range in this case, 37-46 months.


                                    Respectfully submitted,

                                    MICHAEL J. SULLIVAN
                                    United States Attorney


                          By:  S/ Glenn A. MacKinlay
                               GLENN A. MACKINLAY
                               Assistant U.S. Attorney
                               One Courthouse Way
                               Boston, MA 02110
                               (617)748-3215

CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing document by efiling it to counsel for Lee, James Budreau, Esq.


S/ Glenn A. MacKinlay
GLENN A. MACKINLAY

16